UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

T.S., a minor,
and GINA SHARBOWSKI,

        Plaintiffs,                        Case No. 14-10216

v.                                  Paul D. Borman
                                  United States District Judge

UTICA COMMUNITY SCHOOLS,

        Defendant.
_____/

## OPINION AND ORDER REMANDING THIS MATTER
## TO THE STATE ADMINISTRATIVE LAW JUDGE FOR FURTHER PROCEEDINGS

In this action under the Individuals with Disabilities Education Act, 20 U.S.C. §§ 1400, *et seq.* ("the IDEA"), Plaintiff Gina Sharbowski has been a tireless advocate for her son, T.S., in her efforts to obtain for T.S. the free appropriate public education ("FAPE") that is guaranteed under the IDEA. Plaintiffs currently appeal the ruling of the state Administrative Law Judge ("ALJ") Christopher S. Saunders, the latest in a long series of administrative defeats for Plaintiffs, in which ALJ Saunders dismissed the entirety of Plaintiffs' due process complaint and declined to address several of Plaintiffs' claims against the Defendant Utica Community Schools ("Utica') on jurisdictional grounds. The Court has reviewed the parties' briefs on appeal, thoroughly examined the administrative record and conducted a hearing on August 23, 2016. Regrettably, the Court must remand the matter to ALJ Saunders for further proceedings.

The Court is unable to determine, on this administrative record, whether ALJ Saunders correctly ruled, in an Order issued on August 27, 2014, that he lacked jurisdiction to consider, in the

1

first instance, Plaintiffs' claims that Utica failed to implement the due process hearing decision issued by Administrative Law Judge Susan Harris on July 23, 2012, in which ALJ Harris concluded that Utica had failed to provide a FAPE to T.S. and ordered Utica to adopt a number of corrective actions. The jurisdictional issue is thus REMANDED to ALJ Saunders for reconsideration and clarification consistent with this Opinion and Order.

The Court further finds that ALJ Saunders erred in refusing to consider certain evidence and exhibits proffered by Ms. Sharbowski at the administrative hearing and in refusing to permit Ms. Sharbowski to return for the second scheduled hearing date to organize and present additional evidence. The Court therefore REVERSES ALJ Saunders's February 5, 2015 Decision and Order, in which he concluded that Plaintiffs did not carry their burden of proof to demonstrate that the 2013 and 2014 Individualized Education Plans ("IEPs") prepared by Utica for T.S. failed to provide T.S. with a FAPE, and REMANDS the matter to ALJ Saunders for further proceedings consistent with this Opinion and Order.

## I.     BACKGROUND

On July 18, 2011, Plaintiffs Gina Sharbowski and her minor child T.S. filed a complaint in a case previously assigned to this Court, *T.S. and Gina Sharbowski v. Utica Community Schools, et al.*, E.D. Mich. No. 11-13092 (*Sharbowski I*). Plaintiffs claimed in that previously-filed case that Utica had improperly addressed T.S.'s special education needs, denying him a FAPE and brought suit pursuant to the Americans With Disabilities Act (ADA), the Individuals with Disabilities Education Improvement Act (IDEA) and Family Educational Rights and Privacy Act of 1947 (FERPA). In that case, on April 18, 2012, this Court adopted the Report and Recommendation of Magistrate Judge, now District Judge, Laurie Michelson, recommending that Plaintiffs' case be

dismissed without prejudice for failure to properly exhaust administrative remedies.  (*Sharbowski I*, ECF No. 34, Order Adopting Report and Recommendation, ECF No. 32, Report and Recommendation.)  In dismissing the case, the Court followed Magistrate Judge Michelson's recommendation to stay the two-year statute of limitations under 34 C.F.R. § 300.507 to permit Plaintiffs to re-file that case within 90 calendar days from the date of the decision of the ALJ in any future due process proceeding.  (*Id*. at 9 n.4.)  In granting the dismissal without prejudice, the Court denied Plaintiffs' request to stay the case rather than dismiss but did indicate that it would consider an application to proceed *in forma pauperis* at the time of any future filing.  (*Id*. at 2 n. 2.)

Plaintiffs did not appeal the Court's dismissal of *Sharbowski I* and did proceed to administratively address their claims, which resulted in a decision in favor of the Plaintiffs issued by ALJ Susanne E. Harris on July 23, 2012.  The essence of Plaintiffs' claim was that T.S. should have been classified as eligible for special education as a student with Autism Spectrum Disorder (ASD), not as a student who was only Mildly Cognitively Impaired (MCI).  The ALJ (in a 45-page Opinion that was filed with this Court under seal) concluded that Utica had denied T.S. a FAPE, citing numerous failings on the part of Utica with regard to the "individualized education program" ("IEP") for T.S., and ordered Utica to adopt a host of remedial measures.  The ALJ issued several corrective action orders to the Defendant school district and required the school district to file proof of compliance with her Opinion and Orders.  On or about June 11, 2013, the MDE determined that Utica was in compliance with ALJ Harris's July 23, 2012 Order.[1]

_____

[1]  The Court was unable to locate the Michigan Department of Education's ("MDE") "compliance orders" in the administrative record and requested that the parties provide the Court with a copy of the MDE's compliance orders.  The parties did provide two separate "compliance" Orders, one issued by the MDE on January 7, 2013 and a second and final Order issued on June 11, 2013.  The Orders were not filed on CM/ECF.  Accordingly, the Court attaches those Orders to this Opinion

On March 11, 2013, almost eight months after receiving ALJ Harris's decision, the Plaintiffs filed, in the then-closed *Sharbowski I,* what was interpreted by then-Magistrate Judge Michelson as a Motion for Relief From Judgment in the previously-dismissed case, No. 11-13092. (*Sharbowski I*, ECF No. 35, 3/11/2013 "Motion for Assistance from Higher Court to Address Ongoing Issues Post Due Process Hearing"). Plaintiffs complained that the Defendant school district had failed to comply with the ALJ's Decision and Order and stated that Plaintiffs needed the assistance of an attorney, that they did not understand the process and that they did not believe they qualified for *in forma pauperis* status but nor could they afford to refile their case as instructed by this Court in its earlier dismissal of the case without prejudice.

Judge Michelson interpreted the motion as one for relief from judgment and recommended that this Court deny the motion because Plaintiffs in fact prevailed in the administrative proceeding and appeared to be challenging not the outcome of that proceeding but the school district's failure to implement the ALJ's Decision and Order. The Magistrate Judge noted that if Plaintiffs had been challenging the decision of the ALJ, their motion, which came 232 days after the ruling, was time-barred by the 90-day limitation period imposed by the Court in dismissing the case previously. (*Sharbowski I*, ECF No. 40, 9/9/13 Report and Recommendation at 7 n. 2.) The Magistrate Judge concluded that the remedy for Plaintiffs' challenge to the school district's non-compliance was to participate in the state complaint resolution procedure ("CRP") found in 34 C.F.R. § 300.151, *et seq.* (*Id*. at 7.) The Report and Recommendation outlined in great detail the process that Plaintiffs should follow to challenge the school district's alleged failure to implement the ALJ's Decision and Order. Over Plaintiffs' Objection (*Sharbowski I*, ECF No. 41, Objection), which failed to cite any specific

---

and Order as Exhibit A.

4

objection to the Report and Recommendation and largely complained that Plaintiffs needed the assistance of counsel, this Court adopted the Magistrate Judge's Report and Recommendation and denied the motion for relief from judgment on November 7, 2013. (*Sharbowski I*, ECF No. 42.) Again, Plaintiffs did not appeal this Court's ruling.

On January 17, 2014, Plaintiffs filed a new case, No. 14-cv-10216 (*Sharbowski II*), that is presently before the Court. The Original Complaint in this case, titled "Re-Filed Complaint," is a restatement of the claims asserted in *Sharbowski I*. In fact, in *Sharbowski II* Plaintiffs attach and incorporate the complaint from *Sharbowski I*. The Original Complaint in *Sharbowski II* expressed Plaintiffs' continued frustration with the process of administrative exhaustion and complained that Plaintiffs were adrift without the assistance of competent counsel, which they asserted they could not find or afford.

Recognizing that ALJ Harris's July 23, 2012 Decision and Order had noted certain failings on the part of Utica with respect to T.S.'s educational needs, the Court appointed pro bono counsel for Plaintiffs with the hope that with the proper guidance, the Plaintiffs would be able to better understand and see their way through the administrative exhaustion requirements that must precede any action in this Court. To their credit Defendants, despite their legally well-founded pending motions to dismiss, were in agreement that appointment of counsel for the Plaintiffs could help to move the case along to a fair and equitable resolution. On July 24, 2014, the Court assigned counsel, James E. Stewart of the Honigman, Miller firm, to represent Plaintiffs pro bono in this action. (ECF No. 23, Order of Assignment of Counsel.) The Court then directed the parties to participate in facilitation, under the guidance of Dr. Carla Harting, in an effort to resolve certain issues regarding the current educational placement of T.S. The parties met with Dr. Harting on two

5

separate occasions and subsequently, at a status conference held before this Court on October 31, 2014, announced to the Court that they had reached a tentative agreement regarding the proper placement for T.S. for the current school year.

Despite the parties' agreement on an acceptable plan for T.S. for the then-current school year, Plaintiffs were unwilling to agree to dismiss the claims in this action against Utica and the MDE based upon that agreement because Plaintiffs were of the opinion that Utica should be ordered to bear the cost of a private educational placement for T.S. as compensation for the past wrongs committed by prior administrations that were acknowledged in ALJ Harris's July 23, 2012 Opinion. Notably, while ALJ Harris did conclude that Utica had denied T.S. a FAPE, citing numerous failings on the part of Utica with regard to T.S.'s IEP, and ordered Utica to adopt numerous remedial measures, she did not order private placement of T.S. at that time. The Court requested briefing on the issue of the requested private placement and concluded that, particularly in view of the new due process Complaint that Plaintiffs had filed on July 23, 2014, challenging T.S.'s 2013 and 2014 IEPs that was then-pending before Administrative Law Judge Christopher Saunders of the Michigan Administrative Hearing System, this Court was without jurisdiction to consider/order private placement for T.S. at that time in this action. (*Sharbowski II*, ECF No. 31, Order Regarding Plaintiffs' Request for Private Placement of T.S.)

While the Plaintiffs proceeded with their July 23, 2014 due process complaint before ALJ Saunders, the Court resolved Utica's and MDE's long-pending motions to dismiss, and concluded that the issues raised in the Original Complaint, which merely restated the allegations already rejected by the Court in *Sharbowski I*, were either time barred under the IDEA 2-year statute of limitations or the 90-day filing period permitted under that statute, or had not been administratively

exhausted, as explained in great detail by this Court in *Sharbowski I* and *Sharbowski II*.  In agreement with this conclusion, Plaintiffs' counsel stipulated on the record, at the April 9, 2015 hearing on the Defendants' motions to dismiss, to dismiss with prejudice all claims against the MDE and to dismiss as to Utica the claims as stated in the Original Complaint in this action, preserving the right to appeal ALJ Saunders's dismissal of Plaintiffs' July 23, 2014 due process complaint against Utica, which ALJ Saunders had issued on February 5, 2015.  The Court then granted the MDE's motion to dismiss and dismissed MDE from the case, dismissed Plaintiffs' time-barred and unexhausted claims as stated in the Original Complaint in this action against Utica, but denied Utica's motion to dismiss as against Utica those claims which had not been fully exhausted and were the subject of the then-pending July 23, 2014 due process complaint before ALJ Saunders.  The Court then stayed the matter against Utica to give Plaintiffs time to appeal ALJ Saunders' dismissal of Plaintiff's due process complaint and permitted Plaintiffs to file an Amended Complaint against Utica that conformed to these rulings.  Plaintiffs did file a conforming Amended Complaint on May 5, 2015, which set forth the sole administrative appeal that is currently before the Court.  (ECF No. 37.)

## II.    STANDARD OF REVIEW

Under the IDEA, a "party aggrieved by the findings and decision" of an administrative proceeding "may bring a civil action . . . in a district court of the United States."  20 U.S.C. § 1415(i)(2)(A). The district court "(i) shall receive the records of the administrative proceedings; (ii) shall hear additional evidence at the request of a party; and (iii) basing its decision on a preponderance of the evidence, shall grant such relief as the court determines is appropriate."  20 U.S.C. § 1415(i)(2)(B).  The district court's decision shall be based upon a preponderance of the

evidence but the Supreme Court has instructed that "due weight" also must given to the findings and determinations made during the administrative proceeding. *Bd. of Educ of the Hendrick Hudson Cent. Sch. Dist. v. Rowley*, 458 U.S. 176, 206 (1982). *See also Doe v. Bd. of Educ. of Tullahoma City Schools*, 9 F.3d 455, 458 (6th Cir. 1993) (district courts must apply a "modified de novo" standard of review in IDEA administrative appeals, and "should give due weight to the state administrative proceedings in reaching its decision"). In performing their task of reexamining the evidence, district courts must not substitute their own notions of "sound educational policy for those of the school authorities which they review." *Deal v. Hamilton County Bd. of Educ.*, 392 F.3d 840, 849 (6th Cir. 2004) (internal quotation marks and citations omitted). "The amount of weight due to administrative findings depends on whether the finding is based on educational expertise. Less weight is due to an agency's determinations on matters for which educational expertise is not relevant because a district court is just as well suited to evaluate the situation." *Id*. (internal quotation marks and citations omitted).

## III.   ANALYSIS

The IDEA "'leaves to the States the primary responsibility for developing and executing educational programs for handicapped children, [but] imposes significant requirements to be followed in the discharge of that responsibility.'" *Zdrowski v. Rieck*, 119 F. Supp. 3d 643, 659 (E.D. Mich. 2015) (quoting *Schaffer ex rel. Schaffer v. Weast*, 546 U.S. 49, 52 (2005)) (alteration in original). "'[T]he core of the statute . . . is the cooperative process that it establishes between parents and schools [and] [t]he central vehicle for this procedure is the [] IEP process . . . which establishes a framework for parents and educators to work together to identify, evaluate, and plan the education of a disabled child." *Zdrowski*, 119 F. Supp. 3d at 659 (internal quotation marks and

8

citations omitted) (first alteration in original).  The exhaustion procedures discussed at length *supra* are critical to carrying out the goal of providing a FAPE for every handicapped child, affording "[f]ederal court generalists with no expertise in the educational needs of handicapped students . . . the benefit of expert factfinding by a state agency devoted to this very purpose." *Fry v. Napoleon Cmty. Schools*, 788 F.3d 622, 626 (6th Cir. 2015).

In the Due Process Complaint that is the subject of this appeal, Plaintiffs alleged 11 separate violations of the IDEA.  (Pls.' Br. Ex. B, Due Process Hearing Request Form.)  In his August 27, 2014 Decision and Order, ALJ Saunders dismissed  on jurisdictional grounds all but two of the 11 claims set forth in the Due Process Complaint.  (Pls.' Br. Ex. C, Order Following Prehearing Conference.)  In his February 5, 2015 Decision and Order, issued following a hearing and the presentation of evidence, ALJ Saunders dismissed the two remaining claims of Plaintiffs' Due Process Complaint in response to Utica's motion for a directed verdict, finding it unnecessary to consider further evidence, and concluding that Plaintiffs failed to meet their evidentiary burden to establish by a preponderance of the evidence that the 2013 and 2014 IEP's failed to provide T.S. a FAPE.  (Pls.' Br. Ex. D, Decision and Order dated February 5, 2015.)

## A.     ALJ Saunders' August 27, 2014 Jurisdictional Ruling

In reaching the conclusion that he lacked jurisdiction over the bulk of Plaintiffs' claims, ALJ Saunders provided scant authority for his decision.  In his August 27, 2014 written Order, issued following a prehearing conference held on August 9, 2014, ALJ Saunders "dismissed the allegations contained in paragraphs 1, 2, 3, 4, 5, 7, 8, 9, and 10 of Petitioner's due process complaint as those paragraphs contain allegations and/or requests for relief which are outside the jurisdiction of this Tribunal, as was discussed on the record."  (Pls.' Br. Ex. C, 8/27/14 Order 2; Pls.' Br. Ex. F, 8/9/14

9

Hr'g Tr.)  No authority, statutory or otherwise, is cited in the written opinion and an examination of the "record" of the prehearing conference sheds no more light on the legal basis for the ALJ's jurisdictional ruling.  In the course of the prehearing conference to address the jurisdictional issue, ALJ Saunders remarked numerous times that it was "not within the jurisdiction of this tribunal to enforce previous orders," and that such an issue was "for the Department of Education."  (Pls.' Br. Ex. F, 8/9/14 Hearing Transcript 9.)  Again, on the record, ALJ Saunders cited no statute, administrative rule or case law in support of this conclusion.

Although ALJ Saunders provided no legal authority for his jurisdictional decision to decline to address the majority of the claims of Plaintiffs' due process complaint, Utica asserts in its brief to this Court on appeal that the ALJ properly concluded that he lacked jurisdiction because Plaintiffs failed to properly exhaust their administrative remedies before challenging Utica's compliance with ALJ Harris's Order in a due process hearing.  Utica refers to the Court's prior Opinions and Orders in *Sharbowski I* that directed Plaintiffs back to the state compliance procedures for proper exhaustion of their claims challenging Utica's compliance.  While ALJ Saunders did not offer an explanation for his decision, Utica argues that Plaintiffs were required, as instructed by then-Magistrate Judge Michelson in her September 9, 2013 Report and Recommendation, to present their challenge to Utica's compliance through the state complaint procedure.  Utica insists, quoting the Report and Recommendation, that the state complaint resolution procedure was "Plaintiffs' ***exclusive recourse*** for challenging the District's failure to implement the corrective actions required by [ALJ Harris's] Decision and Order . . . ."   (Def.'s Br. 15) (emphasis in original).  Utica argues, again citing the Report and Recommendation, that:  "Only then, after the state complaint process has been completed, could Plaintiffs file for a due process hearing (or go directly to an appeal in

10

state court)." *Id*. According to Utica, this Court "wholly adopted Magistrate's Michelson's Report and Recommendation." *Id*. Because Plaintiffs did not, in Utica's view, avail themselves of the state complaint resolution procedure before challenging Utica's compliance in their due process complaint before ALJ Saunders, he appropriately dismissed claims alleging a failure of Utica to comply with ALJ Harris's Order for lack of jurisdiction. *Id*. at 16-17.

In adopting then-Magistrate Judge Michelson's Report and Recommendation, this Court held that Plaintiffs' only remedy at that time to challenge the school district's non-compliance with ALJ Harris's July 23, 2012 Order was "further administrative review," and not a direct action in this Court under § 1415(i)(2)(A), the "aggrieved party" provision of the IDEA.  (ECF No. 42, PgID 671-72.)  To briefly summarize this Court's prior rulings, the conundrum presented by the Plaintiffs' attempt to challenge Utica's non-compliance directly in this Court under § 1415(i)(2)(A) of the IDEA derived from the fact that Plaintiffs prevailed in the administrative proceeding before ALJ Harris.  Because the IDEA permits a direct appeal to this Court by any person "aggrieved by the findings and decision of a hearing officer," and because Plaintiffs were not aggrieved but were vindicated by ALJ Harris's decision, Plaintiffs did not have a direct avenue of review to this Court under the IDEA on their claim that Utica had failed to comply with the favorable determination that Plaintiffs received from ALJ Harris.  And, in any event, Plaintiffs had missed the 90-day time-frame for appealing an unfavorable hearing officer decision.  Thus, as then-Magistrate Judge Michelson explained in great detail in her September 9, 2013 Report and Recommendation, Plaintiffs had to first seek an administrative ruling on their claim of non-compliance. (*Sharbowski I*, ECF No. 40, 9/9/13 Report and Recommendation 7-10.)

11

Although the Sixth Circuit has not expressly weighed in on whether a direct action lies under § 1415(i)(2)(A) to enforce compliance with a favorable due process hearing decision, and while there is non-precedential authority to the contrary, the Court's 2013 ruling on this issue has been reinforced in subsequent decisions, and most recently in a well-reasoned opinion in the Circuit Court for the District of Columbia. In *B.D. v. District of Columbia*, 817 F.3d 792 (D.C. Cir. 2016), Judge David Tatel of the District of Columbia Circuit Court, acknowledging contrary circuit authority, explained:

> We turn, then, to the Davises' primary preserved argument: that a particular provision of IDEA—20 U.S.C. § 1415(i)(2)(a)—provides a cause of action to enforce a favorable hearing officer decision. That provision grants "[a]ny party aggrieved by the findings and decision" of a hearing officer "the right to bring a civil action . . . in any State court of competent jurisdiction or in a district court of the United States, without regard to the amount in controversy." Since 2004, IDEA has also included a limitations provision for actions brought under section 1415(i)(2)(A). Specifically, "[t]he party bringing the action shall have 90 days from the date of the decision of the hearing officer to bring such an action, or, if the State has an explicit time limitation for bringing such action ..., in such time as the State law allows." Id. § 1415(i)(2)(B).

> *        *        *

> The purpose arguments that the Davises and amici advance and that the First and Third Circuits accepted have some real force. Nonetheless, the statutory text and structure persuade us that section 1415(i)(2)(A) provides no enforcement cause of action. *See Hartford Underwriters Insurance Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 6, 120 S.Ct. 1942, 147 L.Ed.2d 1 (2000) ("[W]hen the statute's language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms." (internal quotation marks omitted)). Section 1415(i)(2)(A)'s plain text refers not simply to an "aggrieved" party, but to one aggrieved "by the findings and decision" of a hearing officer. 20 U.S.C. § 1415(i)(2)(A). One who wins before a hearing officer is not "aggrieved" by the hearing officer's decision.

> The statute of limitations confirms this reading, as the limitations period runs from the issuance of the hearing officer's decision, not from the moment of noncompliance. This is especially telling because such decisions often require more than ninety days to implement. And even when noncompliance occurs within ninety

12

days, it may well take some time to discover. Given this, we doubt very much that Congress intended section 1415(i)(2)(A) to provide an enforcement cause of action. Odd as it may seem for the statute to lack such a cause of action, it would be even odder for Congress to have created one but limited it to violations of hearing officer decisions that both occur and are discovered within ninety days. Although the District made this precise point in its brief, the Davises failed to respond in theirs. Asked about the issue at oral argument, counsel for the Davises recognized that "compliance might or might not occur within ... ninety days," but contended that this means that the statute of limitations simply does not apply to enforcement suits. Oral Arg. Rec. 5:01–5:24. The statute of limitations, however, applies to "[t]he party bringing the action," with no indication that different kinds of actions are treated differently. 20 U.S.C. § 1415(i)(2)(B).

Notably, moreover, IDEA did not contain this statute of limitations when the First Circuit held that parties seeking enforcement were "aggrieved by the findings and decision." *See Nieves–Márquez*, 353 F.3d at 115–17. Nor did the Third Circuit consider the statute of limitations when it followed the First Circuit's lead. *See D.E.*, 765 F.3d at 276–78.

*          *          *

We thus hold that neither section 1415(i)(2)(A) nor section 1331 provides a cause of action for parents seeking to enforce a favorable hearing officer decision.

817 F.3d at 801-02. Thus, while there is non-binding authority to the contrary, the Court finds Judge David Tatel's logic persuasive and reaffirms its 2013 determination that a direct action to this Court did not lie under § 1415(i)(2)(A) of the IDEA to enforce a favorable hearing officer decision against a non-compliant school district. As this Court held in adopting then-Magistrate Judge Michelson's September 9, 2013 Report and Recommendation, "further administrative review" of some type was required.

Because a direct action to this Court was not available to Plaintiffs under the "aggrieved party" provision of the IDEA to force Utica to comply with ALJ Harris's 2012 Decision, then-Magistrate Judge Michelson, in her September 9, 2013 Report and Recommendation, suggested that Plaintiffs should proceed through the state complaint resolution procedure found in 34 C.F.R. §

300.151 *et seq.* and Mich. Admin. Code § 340.1701, § 340.1851-1855 ("Part 8" state complaint procedures and remedies) to challenge Utica's compliance with ALJ Harris's Decision and Order. The federal regulations promulgated pursuant to the IDEA expressly address such an action: "A complaint alleging a public agency's failure to implement a due process hearing decision must be resolved by the [state educational agency – here the MDE]." 34 C.F.R. § 300.152(c)(3). Plaintiffs suggest that they did attempt to seek relief for Utica's non-compliance through the state administrative scheme. On January 26, 2013, Plaintiffs did complain to the MDE that Utica was not complying with ALJ Harris's Order. Pls.' Ex. H. Then, on February 11, 2013, Plaintiff followed up with yet another filing to the MDE in which she detailed several failings of Utica to provide necessary information to permit Plaintiff to have meaningful input into the upcoming IEP meeting. Pl.'s Ex. G. For example, Plaintiffs complained that the independent evaluation that ALJ Harris had ordered was not "independent." Indeed, the evaluator found nothing out of the ordinary in T.S.'s behavior on her two-hour site visit but this conclusion, Plaintiffs argue, is directly contradicted by a host of behavior incident reports that were filed by T.S.'s teachers just days after the "independent evaluator's" site visit. (Compare Pls.' Br. Ex. G, PgID 537-544, November 15, 2012 Observation Report noting that she was "unable to identify problematic behaviors in need of a functional behavioral assessment . . . and T.S. did not engage in aggressive, self-injurious or property destructive behaviors," with Pls' Br. Ex. G PgID 545-548, Daily Observation Notes 11/20/12-12/13/13, documenting multiple in-class incidents of aggressive behavior). Plaintiffs' January 26, 2013 and February 11, 2013 filings with the MDE detailed numerous such examples of instances that Plaintiffs claimed demonstrated Utica's failure to implement ALJ Harris's 2012 Decision and Order. Utica acknowledges these filings but submits that they were insufficient to invoke the Part

14

8 state complaint procedures and that Plaintiffs were required to re-submit their claims of non-compliance in some more formal fashion.

All parties to this action agree that, following the issuance of a decision of the MDE on a state complaint, the complainant has the right to appeal that decision either through the due process complaint procedures set forth in Mich. Admin. Code R. 340.1724f *or* under Michigan's Revised Judicature Act, Mich. Comp. Laws § 600.631, which permits a party aggrieved by any final agency decision to file an action in the state circuit court. *See Lewis Cass Intermed. School Dist. v. M.K. ex rel. J.K.*, 290 F. Supp. 2d 832, 837 (W.D. Mich. 2003) (finding that state-established procedures "cannot trump a party's right to a due process hearing granted under the IDEA," and finding both avenues of appeal open to such an individual).  In other words, it is undisputed that a finding that Plaintiffs *had* availed themselves of the state complaint procedures in an effort to challenge Utica's alleged failure to implement ALJ Harris's 2012 Decision and Order, would have entitled Plaintiffs to appeal any MDE decision denying them relief in a due process hearing before an administrative law judge.

Although Plaintiffs submit, as described *supra*, that they *did* complain to the MDE that Utica was not complying with ALJ Harris's Decision and Order, and *did* receive a compliance decision from the MDE in this matter before filing their due process complaint, their principal argument on appeal is that they are not required to proceed first through the Part 8 state complaint procedures before seeking a due process hearing on their claim of Utica's non-compliance with ALJ Harris's 2012 Decision and Order.  Plaintiffs argued in their brief in this administrative appeal, and reiterated in this Court at oral argument on August 23, 2016, that Judge Gordon Quist's opinion in *Lewis Cass* provides the basis for a ruling by this Court that ALJ Saunders erred in his jurisdictional ruling and

15

that Plaintiffs were entitled to proceed directly to a due process hearing on Plaintiffs' claim that

Utica failed to comply with ALJ Harris's 2013 Opinion and Order without first proceeding through

the Part 8 state complaint procedures.  While *Lewis Cass* is an unpublished opinion and certainly

not binding on this Court, Judge Quist's reasoning certainly supports Plaintiffs' suggestion that their

claim that Utica failed to implement ALJ Harris's 2012 Decision and Order could be the proper

subject of a direct due process complaint.  Admittedly, there are distinguishing facts in *Lewis Cass*.

First, the parents of the hearing impaired child in *Lewis Cass* were directly challenging the

implementation of an IEP developed by the school district – there had been no previous ruling by

an ALJ favorable to the child that the parents were seeking to enforce, which is the case here.  Thus,

the provision of the Code of Federal Regulations expressly directing that "a complaint alleging a

public agency's failure to implement a due process hearing decision must be resolved by the S[tate]

E[ducational] A[gency]," *see* 34 C.F.R. § 300.152(c), did not apply and was not addressed.

(Alterations added).  Additionally, the complainants in *Lewis Cass* had participated in and completed

the state complaint procedures set forth in Part 8 of the Michigan Revised Administrative Rulings

for Special Education, prior to seeking a due process hearing before an Administrative Law Judge

to review the outcome of the state complaint procedures – Plaintiffs' completion of the Part 8 state

complaint procedures is contested here.  Thus, Judge Quist was not called upon to decide, and did

not decide, whether exhaustion through the Part 8 state complaint procedure is a necessary step to

proceeding with a due process hearing on the issue of a school district's failure to implement a due

processing hearing decision.

     However, as pertinent here, Judge Quist held that "state complaint issues," i.e. those that

relate to the "proper implementation of an IEP," could be the subject of a due process complaint

even if those same issues were also the subject of a state complaint proceeding.  Judge Quist

observed that, in response to the question whether "an issue(s) that is the subject of a State complaint

[may] also be the subject of a due process hearing," the United States Department of Education's

Office of Special Education Programs ("OSEP") had emphatically replied:

> Yes, as long as the issue(s) is an alleged violation of Part B of the IDEA or its
> applicable regulations . . . and it relates to the child's identification, evaluation, or
> educational placement *or the provision of FAPE to the child*, it could also be the
> subject of a due process hearing . . . . Filing State complaints does not prevent
> complainants from requesting a due process hearing.  In some cases, *the complaint
> may also be the subject of a due process hearing, or may contain multiple issues of
> which one or more may be part of the hearing.*

290 F. Supp. 2d at 836 (emphasis in original).  Plaintiffs submit that this response by OSEP, which

clearly contemplates at least the simultaneous presentation of state complaint issues through the state

complaint procedures and through a due process hearing, defeats Utica's argument that Plaintiffs

were required to proceed through the Part 8 state complaint procedures before presenting their

challenge to Utica's implementation of Judge Harris's 2012 Decision and Order in a due process

proceeding.  In *Lewis Cass*, Judge Quist concluded that the complainants' "state complaint issues"

were properly presented in a due process hearing:

> In short, OSEP construes the IDEA as granting a parent or public agency the right
> to raise "complaint issues" related to the "provision of FAPE to the child" in a due
> process hearing.  *See id.* Since allegations regarding improper implementation of an
> IEP, as is the instant case, necessarily relate to the "provision of FAPE to the child,"
> the parent in this case, M.K., has the right to raise his "complaint issues" in a due
> process hearing.

290 F. Supp. 2d at 836-37.

Relying on *Lewis Cass*, Plaintiffs submit that their challenge to Utica's failure to implement

Judge Harris's 2012 Decision and Order "necessarily relates to the provision of a FAPE" to T.S. and

therefore was the proper subject of a direct due process hearing (without necessity of first

17

proceeding through the Part 8 complaint procedures) and was properly before ALJ Saunders for resolution. As discussed *supra*, this precise issue was not before Judge Quist because *Lewis Cass* did not involve a challenge to a favorable due process hearing decision and order. However, in *B.D., supra*, Judge Patricia Millett, in her concurring opinion, did directly address this issue:

> I write only to note that the United States Department of Education, which has responsibility for the federal administration and enforcement of the IDEA . . . has identified a third possible avenue for enforcing a hearing officer's decision. . . . Under the IDEA, any "matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child" can be the basis of a due process complaint and hearing. *See* 20 U.S.C. § 1415(b)(6) & (f)(1). In the federal government's view, a school district's failure to comply with a hearing officer's decision is such a matter. Thus, according to the Department of Education, parents facing a lack of compliance might be able to bring another due process complaint to enforce the prior decision and, if necessary, seek judicial review of any denial of needed relief in that proceeding.

817 F.3d at 803-04. While Utica submits in its brief on appeal that such direct review in a due process hearing would be "awkward," *B.D.* suggests that the United States Department of Education would disagree.

In reaching the conclusion that he lacked jurisdiction over the bulk of Plaintiffs' claims, many of which he summarily concluded challenged Utica's failure to comply with ALJ Harris's 2012 Order, ALJ Saunders provided scant authority for his decision. Utica's efforts to fill in the blanks through their brief on appeal cannot substitute for a reasoned opinion from ALJ Saunders. In his written order, ALJ Saunders simply concludes that, after examining Utica's prehearing brief, he "dismissed the allegations contained in paragraphs 1, 2, 3, 4, 5, 7, 8, 9, and 10 of Petitioner's due process complaint as those paragraphs contain allegations and/or requests for relief which are outside the jurisdiction of this Tribunal, as was discussed on the record." (Pls.' Br. Ex. C, 8/27/14 Order 2.) The ALJ reached this conclusion as to each of these paragraphs despite the fact that

18

Utica's Motion for Partial Dismissal of Plaintiffs' due process Complaint differentiated the basis for dismissal of claims 1, 2, and 10 (alleged "state complaint issues") from the basis for dismissal of claims 3, 4, 5, 6, 7, 8, 9, and 11 (allegedly "not within the jurisdiction of the Administrative Law Judge" or requesting relief that is "beyond the authority of the Administrative Law Judge to award"). Pls.' Br. Ex. E, Notice of Insufficiency/Motion for Partial Dismissal.  In its motion for partial dismissal before ALJ Saunders, Utica relied solely on Mich. Admin. Code R. 340.1724f(3), (4), which sets forth the procedures for filing a due process complaint.  Utica provided no analysis to explain why this statutory section precludes the ALJ's consideration of Plaintiffs' claims and the ALJ provides no citation to authority, statutory or otherwise, in his written opinion.  Further, an examination of the "record" of the prehearing conference sheds no more light on the legal basis for the ALJ's jurisdictional ruling.  In the course of the prehearing conference, ALJ Saunders remarked numerous times that it was "not within the jurisdiction of this tribunal to enforce previous orders," and that such an issue was "for the Department of Education."  (Pls.' Br. Ex. F, 8/9/14 H'rg Tr. 9.) Beyond these conclusory remarks, ALJ Saunders gave no analysis for his conclusions.  Indeed, in declining to exercise jurisdiction over Plaintiffs' Claim 2, in which Plaintiffs alleged that Utica did not provide an Autism Spectrum Disorder ("ASD") certified teacher for the 2013/2014 school year, ALJ Saunders appears to have precluded Plaintiffs' reliance on a *new* ASD diagnosis that she provided at the 2013 IEP meeting, *see* Pls.' Ex. 49, and dismissed Claim 2 in its entirety because it "related" to ALJ Harris's previous Decision and Order requiring Utica to provide an ASD instructor. Pls.' Br. Ex. F, 8/9/14 Hr'g Tr.  10-19.

On this administrative record, which the Court has reviewed in great detail, it is impossible for this Court to conduct a meaningful review of ALJ Saunders's jurisdictional ruling.  The Court

19

cannot determine:

(1) for each Claim in Plaintiffs' due process complaint that was dismissed on jurisdictional grounds, the exact statutory or legal basis for the jurisdictional dismissal, *i.e.* what provisions of the IDEA, the Code of Federal Regulations and/or the Michigan Administrative Code or other legal precedent did the ALJ rely upon in reaching his conclusions as to each separate paragraph of Plaintiffs' due process complaint that was dismissed on jurisdictional grounds and how do those provisions support his conclusions;

(2) whether the ALJ considered: (a) the possible relevance to his jurisdictional ruling of Plaintiffs' complaints filed with the "State of Michigan, Michigan Administrative Hearing System and/or Michigan Department of Education," regarding Utica's non-compliance with ALJ Harris's 2012 Decision and Order, *see* ECF No. 53, January 26, 2013 and February 11, 2013 submissions to Harvalee Saunto, Due Process Coordinator, Office of Special Education, and (b) the possible relevance of the MDE's response to those filings, *see* 2/20/13 email from Harvalee Saunto to Ms. Sharbowski indicating that Ms. Saunto had "read through the documents [Ms. Sharbowski] sent and the documents the district has provided regarding compliance with the ALJ Order," and informing Ms. Sharbowski that the MDE would "send notification to [her] and the district by March 1, 2013 regarding the district's compliance or noncompliance." (ECF No. 35 in *Sharbowski I*, No. 11-cv-13092, PgID 464.);

(3) if the ALJ considered whether the MDE's review of the evidence submitted by both the Plaintiffs and Utica, and the MDE's subsequently issued "Compliance Orders," satisfied any requirement that a complaint alleging a public agency's failure to implement a due process hearing decision be resolved by a state educational agency;

20

(4) if the ALJ considered whether, in light of the MDE's review and issuance of Orders of Compliance, it would have been futile for Plaintiffs to further exhaust their administrative remedies through additional state complaint procedures before proceeding to a due process hearing;

(5) if the ALJ considered whether, if further exhaustion would not have been futile, proceeding through the state complaint resolution procedure is still a viable option for Plaintiffs on these facts and if not, why not;

(6) if the ALJ inquired whether the MDE was required to and/or did comply with its responsibilities under the provisions of Mich. Admin. Code R. 340.1852, once it had received Plaintiffs' January 2013 and February 2013 complaints of Utica's alleged non-compliance, to inform Ms. Sharbowski of Plaintiffs' rights under the Part 8 state complaint procedures to contest Utica's compliance with ALJ Harris's 2012 Decision and Order; and finally and most critically,

(7) if the ALJ considered whether, under 20 U.S.C. § 1415(b)(6) & (f)(1), Plaintiffs' claim that Utica failed to comply with ALJ Harris's 2012 Decision and Order is "a matter relating to the provision of a FAPE" to T.S. and therefore was the proper subject of a direct due process hearing, as suggested by *Lewis Cass* and *B.D.*, *supra*, without necessity of exhaustion through a full round of the Part 8 state complaint procedures.

On remand, ALJ Saunders must expressly consider and respond to each of these unanswered questions and specifically must provide the statutory or other legal basis for concluding, separately as to each of claims 1, 2, 3, 4, 5, 7, 8, 9, and 10, why the claim was beyond the jurisdiction of his administrative review.  This analysis is crucial to this Court's ability to conduct a meaningful review of ALJ Saunders's jurisdictional ruling, which barred nearly the entirety of Plaintiffs' claims.  On the present administrative record, this Court can only speculate as to ALJ Saunders's analysis and

reasoning on the bulk of these critical rulings.

**B.      ALJ Saunders' February 5, 2015 Decision and Order on the 2013 and 2014 IEPS**

If, on remand, ALJ Saunders reaches a different conclusion regarding his jurisdiction to hear certain of Plaintiffs' claims, he will of course also have to conduct a new hearing on Plaintiffs' due process complaint, receive new evidence, make new findings of fact and conclusions of law, and issue a new decision and order on Plaintiffs' claims.  Even assuming that, on remand, ALJ Saunders reaches the same conclusion regarding his jurisdiction to hear claims 1, 2, 3, 4, 5, 7, 8, 9, and 10 of Plaintiffs' due process Complaint, the Court finds that ALJ Saunders also erred in his conclusion that Plaintiffs failed to carry their burden of proof on those claims that did proceed to hearing – claims 6 and 11.[2]

Paragraph 6 alleged that: "District is continuing to fail to list all of students needs, create goals, and list the extent of accommodations (being provided) on IEP, as reflected on daily behavior sheets."  Pl.'s Br. Ex. B, Due Process Complaint ¶ 6.  ALJ Saunders ruled that this claim could proceed to a hearing, limited as follows:

> The issues for hearing will be the 2013 and February 24, 2014 IEPs; specifically the issues pertaining to those IEPs will be the level of accommodation and supervision provided to the student, whether those IEPs properly address the student's sensory needs (by way of identifying sensory issues and resultant behaviors), and whether those IEPs contain goals that properly identify and address the student's behavioral issues.

Pl.'s Ex. C, August 27, 2014 Order Following Prehearing Conference 2.

---

[2] Paragraph 11 complained that: "No summer programs available or suitable to meet student's needs."  *Id*. ¶ 11.  Plaintiffs did not address the dismissal of Paragraph 11 in their briefs on appeal and do not appear to contest ALJ Saunders' dismissal of the claim presented in Paragraph 11 regarding "summer programs."

Because of his jurisdictional ruling, and his related decision to exclude nearly half of the 50 exhibits that Ms. Sharbowski offered into evidence, and as discussed *infra*, to seemingly ignore those exhibits that he did receive into evidence, ALJ Saunders appears to have reviewed Plaintiffs' claims related to the 2013 and 2014 IEPs without a thorough and appropriate examination of the evidence and completely devoid of context. In his written opinion, ALJ Saunders mentioned only two exhibits – the 2013 and 2014 IEPs themselves. Thus, even analyzing ALJ Saunders' February 5, 2015 Decision based on those exhibits that he *did* admit into evidence, it is impossible to determine whether and to what extent he considered the majority of those exhibits in reaching his decision because he mentions only the IEPs themselves in his written opinion. Although ALJ Saunders framed the issue for determination as "whether those IEPs contain goals that properly identify and address the student's behavioral issues," and concluded that Plaintiffs failed to carry their burden on this issue, he did not discuss *any* of Plaintiffs' evidence that in fact documented T.S.'s sensory and related behavioral issues. ALJ Saunders never reached the heart of Plaintiffs' claim that Utica failed to identify the sensory issues that triggered T.S.'s behavioral acting out. For example, ALJ Saunders did not discuss any of the following exhibits in his Decision (as numbered at the Jan. 8, 2015 hearing and submitted under seal as Exs. 1-50 at ECF Nos. 44-49): Ex. 1, community based instructor notes that Ms. Sharbowski sought to offer to demonstrate behavior issues that T.S. had on school field trips that were not addressed in the IEP (*see* Pls.' Br. Ex. A, 1/8/15 Hr'g Tr. 14-18); Ex. 5, behavior logs from 9/25/13 to 1/30/14 that demonstrate a behavior incident every single day, behaviors that Ms. Sharbowski believed warranted additional goals to be added to T.S.'s IEP that were not included (*see* Pls.' Br. Ex. A, 1/8/15 Hr'g Tr. 43-45); Ex. 6, behavior incidents from November to December, 2012, that Ms. Sharbowski asserts demonstrate

T.S.'s sensory issues that were brought up at T.S.'s last IEP that had not been adequately addressed in the IEP (*see* Pls.' Br. Ex. A, 1/8/15 Hr'g Tr. 58-61); Ex. 12, progress report on the IEP from March 30, 2012 through February 28, 2013, which Ms. Sharbowski offered to demonstrate what had *not* improved since ALJ Harris's Order (*see* Pls.' Br. Ex. A, 1/8/15 Hr'g Tr. 72-74); Ex. 15, social worker services logs which Ms. Sharbowski sought to offer to demonstrate that T.S.'s sessions with his social worker were triggering some of his behavioral issues – she sought to correlate the service logs with his behavior incident logs (*see* Pls.' Br. Ex. A, 1/8/15 Hr'g Tr. 78-83); Ex. 44, May, 2013 emails to the school regarding an incident when T.S. could not complete an assignment and became frustrated, which Ms. Sharbowski sought to offer to demonstrate that T.S. needed a one-on-one aide to help him complete all assignments (*see* Pls.' Br. Ex. A, 1/8/15 Hr'g Tr. 181).

These are just some of the examples of evidence that Plaintiffs offered, and that ALJ Saunders admitted into evidence, but that ALJ Saunders did not mention in his written opinion and did not discuss on the record other than to admit them into evidence. Thus, the Court has no way of knowing whether he actually considered any of the Plaintiffs' evidence that he did admit or, if he did consider it but found it to be unpersuasive or found evidence submitted by Utica more persuasive, what his rationale might have been. Under the "modified *de novo*" standard of review applicable to IDEA administrative appeals, the Court is instructed to give "due weight" to the findings and determinations of the state administrative law judge. *Tullahoma City Schools*, 9 F.3d at 458. However, ALJ Saunders's lack of analysis prevents this Court from conducting a meaningful review of his decision.

During the course of the hearing, ALJ Saunders, while admitting T.S.'s behavior logs and incident reports that documented extensive sensory and behavioral issues, insisted that the burden

was on Ms. Sharbowski to identify exactly what behaviors she felt needed to be addressed and to suggest goals that could have been included in T.S.'s IEP to address those behaviors. *See, e.g.*, *see* Pls.' Br. Ex. A, 1/8/15 Hr'g Tr. 34:16. Understandably, Ms. Sharbowski, who was never present when these documented incidents occurred and therefore could not identify what might have precipitated them, struggled to articulate a "list" of each of the behaviors that were not being addressed or goals that were not being created to address them. The flagging of "triggers" and setting of goals, in Ms. Sharbowski's opinion, were the very obligations that fell squarely on the team of professionals tasked with educating T.S. (*see* Pls.' Br. Ex. A, 1/8/15 Hr'g Tr. 46-49; 135-37.) It is patently clear from a review of the administrative record that Ms. Sharbowski was overwhelmed by what she perceived to be a massive amount of behavioral conduct that T.S. was exhibiting that was not being addressed by the school. She didn't have a detailed "list" of triggers and goals, which ALJ Saunders continually insisted that she articulate, and she didn't understand that it was her burden to prepare such a "list." She relied on the many exhibits that she had taken much time to collect and prepare. She did ask ALJ Saunders if she could return the next day to present such a "list" on the second scheduled hearing date (the hearing was scheduled to occur on two consecutive days) but he declined this request. ALJ Saunders denied Plaintiff the scheduled second day of hearings and improperly rushed to judgment in granting Utica's motion for a directed verdict. *See* Pls.' Br. Ex. A, 1/8/15 Hr'g Tr. 263:13-17. It was error for ALJ Saunders to fail to discuss *any* of Plaintiffs' evidence or to articulate in some way why he found it unpersuasive, and it was error for him to deny Ms. Sharbowski the right to return on the second scheduled hearing date to organize and clarify the relevance of her numerous exhibits.

25

ALJ Saunders appears to have been convinced that Plaintiffs failed to meet their burden of proof because Ms. Sharbowski failed to compile a "list" of T.S.'s sensory issues that the school was not addressing and "list" of the goals that she believed Utica should be creating to address those issues.   ALJ Saunders also faulted Plaintiffs for failing to mention each of these "behaviors" at the IEP meetings.   Ms. Sharbowski admits that she failed to mention specifically at the two IEP meetings some of things that she now claims in her due process complaint.   However, had ALJ Saunders examined all of Plaintiffs' evidence, he would have realized that Ms. Sharbowski had very specifically communicated her complaints to Utica in great detail in writing and in emails on multiple occasions prior to the IEP meetings.   This evidence, at the very least, merited mention in ALJ Saunders's decision.   *See, e.g.* Pls.' Br. Ex. I, Parent Input to IEP; 1/8/15 Hr'g Tr. 181-82 (discussing Pls.' Exs. 42-45, emails discussing ongoing behavior incidents).

"In order to provide a FAPE, an IEP must be reasonably calculated to enable a child to receive educational benefits. While providing special education services to handicapped children is not guaranteed to produce any particular outcome, in order to constitute a FAPE, an IEP must confer a meaningful educational benefit gauged in relation to the potential of the child at issue. Accordingly, an IEP is insufficient if it provides only trivial educational benefit."   *Woods v. Northport Public School*, 487 F. App'x 968, 974-75 (6th Cir. 2001) (internal quotation marks and citations omitted).   Reviewing Plaintiffs' evidence, one is struck by the fact that (1) the 2014 IEP was almost a verbatim repeat of the 2013 IEP and meanwhile (2) T.S.'s behavior incidents were spiraling out of control.   It was this same failure by the district to identify and document precipitating triggers, and to address them through a modification of the IEP, that ALJ Harris found violated T.S.'s right to a FAPE in 2012: "The ALJ concludes that the Respondent/District did deny

the Student a FAPE for several reasons.  The Student's several IEPs and BIPs clearly indicate that the student is not making progress and sometimes he actually regresses.  What is most troubling is that there is very little change, if any, from one BIP to the next and virtually no change in the student's IEP programming and services to address his lack of progress and behavior issues."  (Pl.'s Ex. J, 7/23/12 Order 41, "Conclusions of Law").  ALJ Harris acknowledged Plaintiffs' complaint that the Utica staff failed to "document antecedent behaviors," and found no evidence in the record charting T.S.'s behaviors.  Pl.'s Ex. J, Harris Order ¶¶ 71-73.  ALJ Harris also faulted Utica for failing to permit Plaintiffs meaningful participation in the IEP process.  *Id.* at p. 42.  Even if ALJ Saunders lacked jurisdiction to *enforce* ALJ Harris's 2012 Decision and Order, he certainly was obligated to acknowledge the historical facts that were observed in ALJ Harris's 2012 Decision and Order, and to consider that history in determining whether Plaintiffs had carried their burden of proof to demonstrate that those same types of failings continued in Utica's preparation of T.S.'s 2013 and 2014 IEPs that were before him.

Even assuming that ALJ Saunders was correct in concluding that he lacked jurisdiction to address Plaintiffs' Claims 1, 2, 3, 4, 5, 7, 8, 9, and 10, he was not prevented from considering the important historical facts, contained in the evidence that Plaintiffs presented and attempted to present at the administrative hearing, that would give context to Plaintiffs' claims challenging the 2013 and 2014 IEPs.  Only when Plaintiffs' evidence is viewed holistically, as it must be, will Plaintiffs have been given a full and fair opportunity, one guaranteed by the IDEA, to prove that Utica continued to fail T.S. throughout the 2013 and 2014 school years and continued to deny him a FAPE. ALJ Saunders erred in: (1) categorically excluding over half of Plaintiffs' proffered exhibits solely because they mentioned or referred to matters that were the subject of ALJ Harris's 2012

27

Decision and Order; (2) failing to discuss his rationale for finding those documents that he did admit unpersuasive or for finding Utica's evidence more persuasive (ALJ Saunders did not consider *any* of Utica's evidence apart from the 2013 and 2014 IEPs themselves); and (3) denying Ms. Sharbowski the opportunity to return for the second scheduled hearing date to present additional (and more organized) evidence.

## IV.    CONCLUSION

For the foregoing reasons, this matter is REMANDED to Administrative Law Judge Christopher S. Saunders for further proceedings consistent with this Opinion and Order. This case will be administratively closed pending the outcome of the administrative proceedings but may be reopened on the motion of either party at the conclusion of those proceedings.

IT IS SO ORDERED.


s/Paul D. Borman
PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE

Dated:  January 20, 2017


CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on January 20, 2017.


s/Deborah Tofil
Case Manager

28